**SO ORDERED.**

**SIGNED this 7th day of December, 2022.**



Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use only
# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

**Kenneth Wayne Wright and
Terri Lynn Wright,**

                      **Debtors.**

**Case No. 19-21544
Chapter 13**

## Memorandum Opinion and Order
## Denying Debtors' Motion for Retention of a Distribution from a Trust
## and Granting the Chapter 13 Trustee's Motion
## for Postconfirmation Amendment of Confirmed Plan

In 1986, long before Debtors Kenneth and Terri Wright filed a Chapter

13 case on July 25, 2019, the parents of Debtor Terri Wright created a

revocable trust. Upon their deaths before the case was filed, the trust became

irrevocable, and Ms. Wright, together with her siblings, became a beneficiary

of the remaining trust assets, subject to a life interest of one of the siblings,

Ronnie True. Ms. Wright's contingent interest in the trust was not included

in Debtors' schedules at filing. In December 2019, afer confirmation of Debtors' thirty-six month plan, Mr. True died. On April 27, 2022, Debtors moved to retain any distribution from the trust.[1] The Chapter 13 Trustee objected and also filed a motion to modify the Chapter 13 plan to account for the value of Ms. Wright's interest in the trust.[2] Debtors objected to the proposed amendment. The parties agreed to submit the motions to the Court based upon a joint stipulation of facts.

The linchpin for resolving these competing motions is determination of the estate's interest in Ms. Wright's beneficial interest in the trust both before and after the death of Mr. True. The Court concludes the contingent interest was property of the estate when the case was filed, and when the death of Mr. True removed the contingency, the value of the estate's interest was increased. The Court therefore denies Debtors' motion to retain the trust distribution and grants the Trustee's motion to amend the confirmed plan.

## I. Stipulated Facts

The Chapter 13 Trustee ("Trustee") and Debtors Kenneth and Terri Wright ("Debtors") filed a stipulation of facts as follows.[3]

---

[1] Debtors appear by Kristina S. Zhilkina-Crump.

[2] W. H. Griffin, the Chapter 13 Trustee, appears by W. H. Griffin.

[3] Doc. 52. A copy of the Revocable Inter Vivos Trust of R.N. True and Ruth G. True is attached and incorporated into the stipulation.

Debtors filed for relief under Chapter 13 on July 25, 2019. Their proposed three year plan was confirmed on October 15, 2019. It provided for little or no distribution to general unsecured creditors, whose claims total $14,196.53. Debtors' plan provides, "[a]ll property of the estate will vest in the debtor at discharge or dismissal of the case."[4] The order of confirmation states: "[a]fter approval of the Trustee's Final Report and Account by the Court, all property of the bankruptcy estate that is not proposed or reasonably contemplated to be distributable under the Plan, shall re-vest in Debtor[s] as Debtor[s'] property following dismissal or discharge, unless the property earlier vested by terms of the confirmed plan."[5]

When this case was filed, Debtor Terri Wright ("Ms. Wright") was a beneficiary of a trust established on November 26, 1986, by her parents, who resided in Oklahoma (the "Trust"). The Trust does not contain any spendthrift provisions. Although initially revocable, since both parents were deceased when the bankruptcy case was filed, the Trust had become irrevocable. At that time, the Trust owned forty acres of real property in Mayes County, Oklahoma. The Trust provides if the settlers' son Ronnie N. True ("Mr. True") survived the death of his parents, for the remainder of his

---

[4] *Id.* p. 2.

[5] *Id.* p. 3.

Case 19-21544   Doc# 61   Filed 12/07/22   Page 3 of 22

life, he was to receive Trust income and continue to reside in a home on the forty acres. Upon Mr. True's death, if he left no descendants, the Trust provides the forty acres "shall in the sole discretion of the Trustee be sold or deeded to his brothers and sisters."[6] When this case was filed, "the value of [Ms. Wright's] interest in the Trust was unknown, contingent, and/or unliquidated."[7]

Mr. True died on December 20, 2019, five months after Debtors' Chapter 13 case was filed. A portion of the forty acres was sold in January 2022 for an amount in excess of $100,000, and the remaining real estate in the Trust has been valued at $250,000. The value of Ms. Wright's interest in the Trust is currently estimated to be approximately $49,442.[8]

Ms. Wright's interest in the Trust was not disclosed in the original schedules, statement of affairs, or the Chapter 13 plan. On April 27, 2022, after the sale of a portion of the forty acres, Debtors filed their motion for retention of a distribution from a trust,[9] thereby revealing Ms. Wright's interest. In the motion, Debtors state they believe that the funds from the

---

[6] Doc. 52-2 p. 5. (Trust, Art. V, § (3)(D)).

[7] Doc. 52 p. 2.

[8] *Id.*

[9] Doc. 36.

4

sale of Trust assets will be disbursed after they have completed the Chapter 13 plan payments and allege the funds should not be considered property of the estate.

On May 17, 2022, the Trustee objected to Debtors' motion[10] and on June 10, 2022, moved to modify Debtors' Chapter 13 plan.[11] The Trustee contends the Trust interest is property of the estate and the Chapter 13 plan should be amended to increase payments enough to pay general unsecured creditors in full from Ms. Wright's interest in the Trust. The motion to amend was filed before Debtors had completed all payments under the original plan.

## II. Analysis

### A. The issues in controversy.

Debtors' and the Trustee's motions both pose the same question: does property of the Chapter 13 estate include Ms. Wright's interest in the Trust? Debtors assert that the interest was not included in the estate on the date of filing and any distribution to which Ms. Wright became entitled after the death of Mr. True likewise is not property of the estate. When moving to amend the Chapter 13 plan, the Trustee contends after the death of Mr. True,

---

[10] Doc. 40.

[11] Doc. 43.

Case 19-21544    Doc# 61    Filed 12/07/22    Page 5 of 22

Ms. Wright's interest in the Trust was property of the estate and should be devoted to the payment of unsecured creditors.

**B. Ms. Wright's interest in the Trust is property of the estate.**

**1. Ms. Wright's interest in the Trust was included in the estate under § 541(a) when the case was filed.**

The joint stipulation of facts states, "At the time the case was filed, debtor Terri Wright was a contingent beneficiary of "[12] her parents' trust. Review of the Trust clarifies that Ms. Wright's interest became irrevocable upon the prepetition death of both her parents. The contingency is the delay of distribution to Ms. Wright until after the lifetime of Ronnie True, one of Terri's brothers, who was entitled to Trust income and to reside on Trust property until his death.[13] Describing the interest as contingent has reference to the delay in enjoyment, not to a possibility of divestment by amendment of the Trust or the happening of a disqualifying event, other than the death of Ms. Wright before her brother.

---

[12] Doc. 52 p. 1.

[13] If Mr. True left natural and not adopted lineal issue, the trustee was empowered in his discretion to administer the forty acres for such children's benefit until the youngest is eighteen.

6

Section 541[14] defines property of the estate broadly as comprised of all legal or equitable interests of the debtor in property, wherever located and by whomever held, as of the commencement of the case.[15] "[C]ontingent interests are property of the bankruptcy estate even if the rights do not accrue or are uncertain until a date after the bankruptcy filing."[16] In a case similar to this, the Eighth Circuit BAP held that a debtor's interest as a contingent remainder beneficiary in the corpus of a trust was property of the estate, even though the debtor would not receive any distribution until after the death of his grandfather, who was the life beneficiary.[17]

---

[14] 11 U.S.C. § 541. All references in the text to title 11 shall be to the section number only.

[15] There are two statutory exceptions to property of the estate, as provided in § 541(b) and (c)(2). Debtors do not contend that any § 541(b) exceptions are applicable, but do argue that Ms. Wright's interest is excluded from the estate by § 541(c)(2) as a spendthrift trust under Oklahoma trust law. This position is rejected below.

[16] *Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199, 1208 (10th Cir. 2010); *see also Potter v. Drewes (In re Potter)*, 228 B.R. 422, 423-24 (8th Cir. BAP 1999) (discussing case law prior to enactment of the Bankruptcy Act of 1978 that concluded property included contingent interests and concluding Congress enacted § 541 to adopt that case law analysis); *In re McDonald*, 519 B.R. 324, 336 (Bankr. D. Kan. 2014) ("contingent interests fall within the bankruptcy estate"); *Speth v. Postel (In re Koksal)*, 451 B.R. 144, 151 (Bankr. D. Kan. 2011) (addressing valuation of estate's contingent, reversionary interest in a bond).

[17] *In re Potter*, 228 B.R. at 424.

7

**2. The Court rejects Debtors' argument that the Trust interest was excluded from the estate on the date of filing because it had no value.**

Debtors argue Ms. Wright's Trust interest was not property of the estate because it had no value on the date of filing. The stipulation of facts does not include a statement that the value on the date of filing was zero or any other value.[18] Debtors present no argument regarding value based upon the agreed facts.[19] Because Debtors did not disclose the Trust interest in the original schedules or the plan, there has not been a prior valuation in the case.

Given the absence of facts relating to valuation, it appears Debtors' position is that because the Trust interest was contingent on the date of

---

[18] Since the motions are submitted for ruling based upon the stipulation, an evidentiary hearing on value is foreclosed.

[19] An individual with appropriate expertise could value the Trust interest on the date of filing based upon the relevant facts, including the value of the Trust property and the life expectancies of Ms. Wright and Mr. True. The Trust suggests that Mr. True was disabled in some manner. It refers to his Social Security income and provides the Trust:

> [s]hall continue to provide a home for Ronnie N. True on [the Trust property] during his lifetime, or so long as he is able to reside on the property. If, in the opinion of the Trustee and Ronnie's doctor, Ronnie becomes incapacitated to the extent that he should no longer reside on the property, the Trustee shall have the power and authority to . . . obtain funds from the disposition of the real property, which shall be deposited into the trust account.

Doc. 52-1 p. 5.

8

filing, it had no value, as a mater of law. But they present no legal authorities in support. Contrary to Debtors' position, this Court has treated the value of a contingent interest as an issue of fact.[20] "The fact that a property interest may be difficult to value does not mean the property has no value."[21]

The Court therefore rejects Debtors' unsupported conclusion that the Trust interest had no value on the date of filing and is excluded from the estate for this reason.

### 3. The Court rejects Debtors argument that the interest in the Trust was excluded from the estate under § 541(c)(2).

Section 541(c)(2) excepts from property of the estate the interest of debtor-beneficiary in a spendthrift trust. It provides, "A restriction on the transfer of a beneficial interest of a debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." As the stipulation of facts provides, the Trust "does not contain any spendthrift provisions."[22] Nevertheless, Debtors argue that an Oklahoma statute provides spendthrift protection, thereby removing Ms. Wright's interest from property of the estate.

---

[20] *See In re Koksal*, 451 B.R. at 144 (rejecting conclusions of experts testifying regarding value of contingent reversionary interest in a bond).

[21] *In re Hutchinson*, 354 B.R. 523, 532 (Bankr. D. Kan. 2006).

[22] Doc. 52 p. 1.

9

The Oklahoma statute cited by Debtors is 60 Okla. Stat. Ann. § 175.25(E)-(F). The statute states:

> E. The right of any beneficiary of a trust to receive the principal of the trust or any part of it, presently or in the future, shall not be alienable and shall not be subject to the claims of his creditors.

> F. Where the interest of the beneficiary of a trust is subject to the exercise of discretion by the trustee or by another, the provisions of this act as to the rights of creditors and assignees shall apply with respect to any sums which the trustee or such other person determines shall be paid to or for the beneficiary.

There is no helpful Oklahoma case law construing these subsections. The Court must therefore turn to general principles of statutory construction.

Under Oklahoma law, to the extent a subsection of a statute is susceptible to more than one interpretation, the entire statute must be read and meaning given to the subsection be determined by considering the statute as a whole.[23] The relied-upon Oklahoma statute, § 175.25, is a 1941 enactment addressing spendthrift trusts. Subsection (A) of § 175.25 provides that *specific words* in a trust stating the *income* of a trust shall not be subject to voluntary or involuntary alienation by the beneficiary of that trust are valid and enforceable,[24] but subsection (B) limits this protection to annual

---

[23] *Price v. State of Oklahoma, ex rel., Oklahoma Tax Comm'n (In re Holt)*, 932 P.2d 1130, 1135 (Okla. 1997).

[24] 60 Okla. Stat. Ann. § 175.25(A) ("A. Any instrument creating a trust may provide by specific words that the interest of any beneficiary in the income of the trust

10

income in excess of $25,000. Subsection (E), cited by Debtors, extends the spendthrift protection to the entire *principal* of the trust containing an express spendthrift limitation and therefore has no bearing on Ms. Wright's interest.  Debtors construe subsection (E) as if it were a stand alone provision which independently provides spendthrift protection to trusts which lack specific words addressing alienability. But when the subsection is construed as a whole with subsection (A) and other subsections, it is clear that it does not function in this manner and does not support Debtors' position in this case.

As compared with subsection (E), the purpose of subsection (F), on which Debtors also rely, is less apparent. In any event, subsection (F) does not apply here. The relevant discretion of the Trustee is whether to *deed or sell* the forty acres for the benefit of Mr. True's siblings, after satisfaction of

---

shall not be subject to voluntary or involuntary alienation by such beneficiary. Subject to the following provisions of this section, a direction to this effect shall be valid and enforceable.").

Mr. True's life estate.[25] The focus of the subsection, the "*interest*" of Ms. Wright and her siblings as beneficiaries, is not subject to trustee discretion.

The Court rejects the construction of Oklahoma law urged by Debtors and finds that Ms. Wright's interest in the Trust is not excluded from the estate by § 541(c)(2).

**4. Ms. Wright's interest in the Trust was property of the estate when Debtors moved to retain Trust distributions and when the Trustee moved to amend the confirmed plan.**

The Trustee submits that the death of Ms. Wright's brother, whereby the contingency on Ms. Wright's Trust interest was removed by termination of her brother's life estate, resulted in an increase in value of the estate's interest. Debtors respond, "an accurate view of the nature of [Ms. Wright's] property right" before and the death of the recipient of the life estate is "as

---

[25] The Trust provides in Article V (D) as follows:

> If Ronnie N. True leaves no natural and not adopted lineal descendant, then at this death the forty (40) acres, if not sooner sold, shall in the sole discretion of the Trustee be sold or deeded to his brothers and sisters and by representation to the issue surviving any brother or sister who predeceases him.

Doc. 52-1 p. 5.

independent interests."[26] In other words, Debtors argue the interest in the Trust after Mr. True's death is property acquired postpetition.[27]

The Court holds the death of Mr. True removed the contingency and increased the value of the Trust interest. The interest was property of the estate when the case was filed, and the estate's interest as not terminated when the Chapter 13 plan was confirmed. Debtors' Chapter 13 plan, as well as the order of confirmation, delayed vesting of property of the estate in the Debtors until discharge or dismissal of the case.[28] Ms. Wright's interest in the Trust, which as explained above, was property of the estate when the case was filed, remained property of the estate after confirmation.

Postpetition appreciation of estate property because of the satisfaction of a contingency is included in the estate.[29] In *Potter*,[30] the Eighth Circuit

---

[26] Doc. 59 p. 4, p. 5.

[27] If Debtors were correct and the interest in the Trust is property acquired postpetition, the Trust interest would be analogous to the postpetition cause of action at issue in *In re Taylor*, 631 B.R. 346 (Bankr. D. Kan. 2021).

[28] Debtors' plan provides, "[a]ll property of the estate will vest in the debtor at discharge or dismissal of the case." Doc. 2 p. 4. The confirmation order states, "[a]fter approval of the Trustee's Final Account by the Court, all property of the bankruptcy estate that is not proposed or reasonably contemplated to be distributable under the Plan, shall re-vest in the Debtor as Debtor's property following dismissal or discharge, unless the property earlier vested by terms of the confirmed plan." Doc. 25 p. 3.

[29] *In re Paolella*, 85 B.R. 974, 976 (Bankr. E.D. Pa. 1988) ("Postpetition appreciation in the value of property, except to the extent of the debtor's potential exemption rights pursuant to 11 U.S.C. § 522, accrues for the benefit of the trustee until the property is liquidated or abandoned."); *see* 11 U.S.C. § 541(a)(6) (property of

13

BAP applied this principle to a contingent remainder interest in a trust. The debtor's grandfather, then ninety-one years old, was the life beneficiary of a trust. Upon the death of the life beneficiary, the corpus of the trust was to be divided equally between the debtor (who was in his mid-forties) and his siblings. The case trustee sought to preserve the potential increase in value of the trust interest for creditors. The debtor responded that the estate's interest under § 541(a)(1) was limited to the value on the date of filing. The Eighth Circuit BAP ruled in favor of the trustee. It reasoned that "[n]othing in § 541 suggests that the estate's interest is anything less than the entire asset, including any changes in its value which might occur after the date of filing. . . . [P]ost-petition appreciation in the value of property accrues for the benefit of the trustee."[31]

This Court cited *Potter* with favor in *Koksal*,[32] where the issue was the value of the Chapter 7 estate's interest in a contingent, reversionary interest in a bond, posted prepetition to obtain stay of execution of a state court judgment, that had been forfeited postpetition. Following *Potter* and other

_____

the estate includes proceeds, product, offspring, rents, or profits of or from property of the estate).

[30] *In re Potter*, 228 B.R. at 422.

[31] *Id*. at 424.

[32] *In re Koksal*, 451 B.R. at 144.

14

cases holding that the estate benefits from appreciation that may occur as contingencies are fulfilled, the Court held that "[n]ot only is the estate's contingent reversionary interest in the Cash Bond as of the date of filing property of the estate, but the estate also included postpetition increases or decreases in the value as a result of the happening of the contingent event."[33]

A recent Tenth Circuit opinion, *Barrera*,[34] is the only authority cited by Debtors in support of their position that the removal of the contingency resulted in a new asset, rather than an increase in value of the estate's interest in the Trust. In *Barrera,* the Chapter 13 debtors converted their case to Chapter 7 after the post confirmation, pre-conversion sale of their appreciated home. The Tenth Circuit affirmed denial of the Chapter 7 Trustee's request for turnover of the sale proceed based on § 348(f). That subsection provides that when a case is converted from Chapter 13 to Chapter 7, the property of the converted case consists of property as of the date of filing that remains in possession of the debtors at the time of conversion. The Tenth Circuit held the debtors could retain the sale proceeds. The Circuit reasoned that the home, which was property of the estate when the case was filed, automatically vested in the debtors when the Chapter 13 plan was

---

[33] *Id.* at 153.

[34] *Rodriguez v. Barrera (In re Barrera)*, 22 F.4th 1217 (10th Cir. 2022).

15

confirmed.[35] The home therefore was not property of the Chapter 13 estate when sold and the proceeds were not proceeds of estate property. Further, the home no longer existed at the time of conversion to Chapter 7 and the sale proceeds, which did exist, were a separate property interest not included in the Chapter 7 estate.

This case is clearly distinguishable from *Barrera*. In this case, the Trust interest did not vest in the Debtors when their Chapter 13 plan was confirmed. The Trust interest was property of the estate when the case was filed, and unlike *Barrera*, there has been no sale or other event removing it from the estate. The change that occurred was removal of the contingency, the termination of Mr. True's life estate, resulting in an increase of the value of the Ms. Wright's interest in the Trust. Ms. Wright held a vested remainder interest in the Trust both before and after her brother's death. This case does not come within the rationale of *Barrera*.

The satisfaction of the contingency resulted in an increase in the value of the estate's interest in the Trust. The Trust interest remains property of the estate.

---

[35] *Id.* at 1223 (citing 11 U.S.C. § 1327(b)). Section 1327(b) provides, "[e]xcept as otherwise provided in the plan or order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

16

**C.  Debtors' motion for retention of a distribution from the Trust is denied.**

Debtors' motion to retain distributions from the Trust is premised upon the view that Ms. Wright's contingent interest in the Trust was not property of the estate when the case was filed and when the contingency was satisfied. As examined above, both of these premises are erroneous. Until the case is closed, Ms. Wright's Trust interest, and any distributions in satisfaction of that interest, is property of the estate.

**D.  The Chapter 13 Trustee's post-confirmation motion to modify Debtors' Chapter 13 plan under §1329(a) is granted.**

**1.  For purposes of post confirmation plan amendment, the value of Ms. Wright's interest in the Trust after the death of her brother is included in the best interest of creditors calculation.**

The Trustee seeks to modify Debtors' confirmed Chapter 13 plan to "increase the amount of payments to the general unsecured claimants to payment in full to the extent of the debtors' portion of the liquidated or to be liquidated trust assets."[36] Debtors oppose the motion. The Court finds the conditions for modification are present.

The Trustee moves for plan amendment under §1329. This Court in *Taylor*,[37] recently examined the standards for amendment of a Chapter 13

---

[36] Doc. 43 p. 3.

[37] *In re Taylor*, 631 B.R. at 346.

plan under § 1329 to increase payments when the estate receives an asset postconfirmation. Section 1329(a)(1) provides that any time after confirmation but before the completion of payments under a plan, the plan may be modified upon request of the Trustee to increase payments on claims of a particular class. Subsection (b)(1) of § 1329 provides "the requirements of section 1325(a) of this title apply to any modification under subsection (a)." Section 1325(a) enumerates plan confirmation standards, which include the best interest of creditors test in subsection (a)(4). That test requires:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

As this Court explained in *Taylor*, "[t]he application of the test requires the comparison of two calculations. The first is the value, as of the 'effective date of the plan,' of the property to be distributed to each unsecured creditor during the case."[38] As applied to a proposed amended plan, the effective date of the plan is the date of the amended plan. The second calculation is the hypothetical Chapter 7 liquidation; it is what "a Chapter 7 trustee would produce for unsecured creditors if the estate were liquidated on the date of the

---

[38] *Id.* at 349 (quoting § 1325(a)(4)).

18

postconfirmation modification."[39] It is controlled by § 348(f), that states, "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession or is under the control of the debtor on the date of conversion." The requirements for property to be included in the liquidation analysis are therefore twofold - the property must have been property of the estate on the date of filing; and (2) it must remain with the debtor on the date of modification. To be confirmed, a plan as modified must propose to distribute to unsecured creditors at least as much as they would receive if the case were converted to Chapter 7 on the effective date of the modified plan.

In *Taylor*, the Court applied the foregoing analysis and concluded the Chapter 13 debtor's receipt of proceeds from the settlement of a postpetition, postconfirmation personal injury claim were not included in the best interest test for purposes of the Chapter 13 Trustee's motion to modify the confirmed plan. The personal injury claim did not exist on the date the petition was filed; the value was therefore excluded from the best interest hypothetical liquidation analysis.

The application of the *Taylor* analysis to the facts of this case yields the opposite result. Here the contingent interest in the Trust was property of the

---

[39] *Id*. at 353.

Case 19-21544    Doc# 61    Filed 12/07/22    Page 19 of 22

estate when the case was filed; it remained in the estate, with an increased value, when the Trustee moved to modify the plan. The Trust interest is included in the liquidation analysis.

A matter not addressed by *Taylor* and not raised by the parties, is the date of valuation of property included in the hypothetical liquidation. The Court, based upon the Code, finds the valuation date is the date of the amended plan. Section 1325(a)(4) provides the value "as of the effective date of the plan" of property to be distributed under the plan to unsecured creditors not be "less than the amount that would be paid on such claim if the estate . . . were liquidated under chapter 7 on such date." As examined above, for post confirmation plan modifications, the "effective date of the plan" is the effective date of the modification. Therefore, calculation of the hypothetical liquidation payments to unsecured creditors in § 1325(a)(4) must be the value of the assets on the date of the proposed amended plan.[40] The parties have stipulated that the value of Ms. Wright's Trust interest on such date is $49,442.[41]

---

[40] Section 348(f)(1)(B) provides that when a case under Chapter 13 is converted, valuations of property and of allowed secured claims in the Chapter 13 case shall not apply in the converted Chapter 7.

[41] Ms. Wright suggests any amended plan should address only her unsecured debt of approximately $3200 (Doc. 57 p. 6), not Debtors' combined unsecured debt of approximately $14,000. No supporting stipulated facts, arguments, or authorities are presented. This is a matter for future resolution.

20

**2. The Trustee's postconfirmation motion to amend the confirmed plan was timely filed.**

The Court rejects Debtors' argument that the Trustee's motion to amend the plan is untimely. Section 1329(a) allows for modification of a plan "anytime after confirmation but before the completion of payments under such plan." The stipulated facts state, "[a]t the time of the filing of the Chapter 13 Trustee's Motion to Modify the Chapter 13 Plan, the debtors had not completed all of the payments under the original confirmed Plan."[42] The bankruptcy court's power to approve a modification is not destroyed by the debtor's completion of plan payments between the date of the filing of a motion to modify the plan and the date the court considers whether to approve the modification.[43]

The Trustee's motion for postconfirmation of the Debtors' Chapter 13 plan is granted. Ms. Wright's Trust interest, valued as of the date of the plan amendment, shall be included in the hypothetical liquidation analysis for purposes of the best interest of creditors test under § 1325(a)(4).

---

[42] Doc. 52 p. 3.

[43] *Germeraad v. Powers*, 826 F.3d 962, 969 (7th Cir. 2016).

21

### III. Conclusion

For the foregoing reason, Debtors' motion to retain Trust distributions is denied and the Chapter 13 Trustee's motion for postconfirmation amendment of the Chapter 13 plan is granted.

**It is so ordered.**

###

Case 19-21544   Doc# 61   Filed 12/07/22   Page 22 of 22